# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**DALLAS HANKINS,**
**Claimant Below, Petitioner**

**FILED**
**November 15, 2022**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 22-ICA-12       (JCN: 2021013918)**

**SPROUTING FARMS CORP.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Dallas Hankins appeals the July 11, 2022, Order of the Workers' Compensation Office of Judges ("OOJ"). Respondent Sprouting Farms Corp. filed a timely response.[1] Petitioner did not file a reply brief. The issues on appeal are whether the OOJ erred in affirming the claim administrator's order dated October 6, 2021, denying the compensability of lumbar radiculopathy, and the orders dated September 9, 2021, denying authorization for a left L5-S1 lumbar transforaminal epidural steroid injection ("TESI" or "LESI"), and suspending temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the OOJ's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Hankins injured his low back while working for Sprouting Farm Corp. on January 4, 2021, when he was lifting boxes into a truck and experienced shooting pain in his back. He subsequently filed a workers' compensation claim related to this injury. The claim administrator held the claim compensable for a lumbar sprain/strain by order dated January 15, 2021. The order also granted TTD benefits from January 6, 2021, through January 18, 2021.

Dr. Crow, a neurosurgeon, examined Mr. Hankins on February 26, 2021. At the visit, Mr. Hankins reported intermittent back pain and left buttock pain over the last few

---

[1] Petitioner is represented by Reginald D. Henry, Esq. Respondent is represented by Jeffrey B. Brannon, Esq. We note that the cover page of respondent's brief lists "Insperity Services, L.P. Employer." However, the relationship between Sprouting Farms Corp. and Insperity Services, L.P. is not explained, and the case below did not include Insperity Services, L.P. as a party, so we decline to amend the case style.

1

years, but no leg symptoms until the injury. Based on the examination and a recent MRI, Dr. Crow diagnosed back and left leg pain after a lifting injury, left L5 radiculopathy, and Grade I L5-S1 spondylolisthesis with left foraminal and lateral recess stenosis and moderately severe L4-5 disc degeneration. Dr. Crow's treatment recommendation was a left L5 LESI and possible surgery for disc degeneration and left L5 radiculopathy. Dr. Crow kept Mr. Hankins off work until the injection was completed.

Mr. Hankins subsequently underwent three electromyography/nerve conduction studies ("EMG/NCS") to measure the electrical activity of his muscles and nerves in his lower extremities. On March 18, 2021, Dr. Goldfarb performed the first test, which was normal and revealed no radiculopathy. A second test, the only abnormal test, was performed by Dr. Richards on May 13, 2021. Dr. Richards said the test was abnormal and suggestive of low lumbar radiculopathy. Further, Dr. Richards said EMGs may be normal in up to 30% of cases of radiculopathy. A third test conducted by Dr. Ferguson on July 29, 2021, was normal.

In a report dated August 24, 2021, Dr. Stoll issued an addendum to a previous independent medical evaluation.[2] Dr. Stoll reviewed the three EMG/NCS reports and questioned the validity of the single, abnormal test. He said the report for the abnormal test was "nonspecific and vague" as it did not mention a specific nerve root involvement. Thus, Dr. Stoll opined that it was inconsistent with the purpose of an EMG/NCS, which is to identify a specific nerve root involvement. He concluded that the testing did not support a diagnosis of lumbar radiculopathy.

Dr. Stoll then compared imaging studies that included MRIs and x-rays dated 2003, 2017, and 2021, and determined that they revealed a natural, age-related progression of preexisting lumbar spondylosis and spondylolysis. Based upon this and his conclusion from the EMG/NCS testing, he recommended that the claim administrator deny Dr. Crow's request for a lumbar TESI, as it was not medically and causally related to the work injury. He said the purpose of the injections here was to treat preexisting, noncompensable lumbar spondylosis and spondylolysis and the compensable injury was now beyond Rule 20 treatment guidelines.[3]

Dr. Stoll also found no medical reason preventing Mr. Hankins from returning to his work duties. Dr. Stoll placed Mr. Hankins at maximum medical improvement ("MMI") for the compensable sprain of ligaments of the lumbar spine and found 4% whole person impairment related to the compensable injury.

---

[2] The previous IME report that Dr. Stoll referenced in his Addendum report was not included in the record below.

[3] *See* W. Va. Code R. § 85-20 (2006).

The claim administrator issued two orders involved in this appeal on September 9, 2021. One order denied Dr. Crow's request for the L5-S1 LESI injections based upon Dr. Stoll's addendum report, because two of the three EMG/NCS tests were normal, and that treatment for a lumbar sprain was beyond the treatment guidelines of Rule 20. The second order suspended TTD benefits based on Dr. Stoll's finding that Mr. Hankins could resume normal work duties.

Dr. Wisman, the treating physician in this claim, filed a Diagnosis Update dated September 13, 2021, requesting lumbar radiculopathy to be added as a compensable condition in the claim. The claim administrator denied the request in an order dated October 6, 2021, which is the third order at issue in this appeal. The order stated the denial of the diagnosis was based on the two normal EMG/NCS reports and Dr. Stoll's report.

Dr. Wisman's report dated October 27, 2021, said Mr. Hankins had a prior back injury in 2017, but it resolved in a week and caused no further issues until January 24, 2021. He also said he had no evidence that Mr. Hankins was treated for lumbar issues before his injury in 2017. Finally, Dr. Wisman stated that Dr. Crow indicated an acute L5-S1 nerve impingement was caused by the injury and recommended injections. Dr. Wisman expressed his support for the injections and said a "discreet [sic] new injury" had occurred.

In a decision entered on July 11, 2022, the OOJ affirmed the order dated October 6, 2021, which denied the compensability of lumbar radiculopathy. The decision also affirmed the two orders dated September 9, 2021, denying Dr. Crow's request for L5-S1 LESI injections, and suspending TTD benefits.[4] The decision found that Mr. Hankins failed to prove a diagnosis of radiculopathy, and failed to prove that the lumbar injection was medically related and reasonably required medical treatment for the compensable low back strain. The decision also found that Mr. Hankins did not prove he remained temporarily totally disabled as a result of the compensable injury.

The OOJ found that Dr. Wisman's report reflected an incomplete understanding of Mr. Hankins' medical history, which included a substantial evidentiary record of preexisting low back injuries and complaints. The decision pointed out that the only evidence supporting radiculopathy consisted of some of Dr. Wisman's reports, the report of Dr. Crow, and one EMG/NCS report. The OOJ noted that Dr. Crow did not have the benefit of reviewing the EMG/NCS data before making his diagnosis. It also noted that Dr. Wisman incorrectly indicated that Dr. Crow found that the injury caused an acute L5-S1 nerve impingement. Instead, as the OOJ noted, Dr. Crow's report suggested that the injections were related to disc degeneration and L5 radiculopathy. The decision also said

---

[4] Mr. Hankins also filed with the OOJ a protest to another order dated September 9, 2021, that denied authorization for follow-up visits with Dr. Wisman or any other provider. The OOJ's decision dated July 11, 2022, modified this order and it is not at issue in this appeal.

the lumbar CT reports dated July 28, 2021, and September 5, 2012, were very similar and noted noncompensable pars defects at L5, and disc bulging at L5-S1 with neuroforaminal stenosis. Additionally, the OOJ observed that after Dr. Wisman requested the Diagnosis Update, some of his treatment notes listed a diagnosis of piriformis syndrome rather than radiculopathy.

Accordingly, the OOJ found that the claim was properly closed for TTD benefits, since the evidence established that Mr. Hankins had reached his MMI based on Dr. Stoll's credible report. The OOJ further stated that Dr. Wisman did not address Mr. Hankins' ability to work, and there was no medical evidence rebutting Dr. Stoll's finding of MMI. Mr. Hankins now appeals.

Our standard of review is set forth in W. Va. Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Although this statute specifically references orders of the Board of Review, this Court concludes that the same standard should apply to our review of orders issued by the OOJ during the period of time when administrative proceedings were being transferred from the OOJ to the Board of Review. *See* W. Va. Code § 23-5-8a (2022) (transferring powers and duties of OOJ to Board of Review); W. Va. Code § 23-5-12b (2021) (specifying this same standard of review when Board of Review heard appeals of OOJ's orders).

On appeal, Mr. Hankins argues the OOJ erred in finding lumbar radiculopathy did not result from the compensable injury. In support of his argument, Mr. Hankins refers to and compares pre-injury versus post-injury MRI results for the lumbar spine. He argues a comparison of the MRIs from November 4, 2003, September 20, 2017, and January 18, 2021, demonstrates a progression of the left L5 nerve in the lumbar spine and that the change relates to the injury.

4

Additionally, Mr. Hankins argues that the EMG/NCS by Dr. Richards suggested lumbar radiculopathy. Mr. Hankins relies upon Dr. Richards' statement that up to 30% of EMG results can be normal in the event of the condition, to explain why the results from the other two EMG/NCS tests did not support the diagnosis. Further, he argues Drs. Wisman and Crow diagnosed lumbar radiculopathy and found it developed after the injury in the claim. Mr. Hankins points out that Dr. Wisman specifically determined that the back pain that radiated to the bilateral hip, groin, and legs was a discrete new injury resulting from the accident in this claim. Mr. Hankins contends Dr. Wisman noted that he had not suffered from back problems since 2017 and was not debilitated by the symptoms until the accident on January 4, 2021. Thus, Mr. Hankins argues that the OOJ erred when it found that he had not established a diagnosis of lumbar radiculopathy.

Mr. Hankins cites syllabus point 5, *James A. Moore v. ICG Tygart Valley, LLC*, No. 20-0028, 2022 WL 1262269 (W. Va. Apr. 28, 2022), which states:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Mr. Hankins argues that until the injury, he was able to work without problems from 2017 (the date of his most recent prior back injury) until the injury in this claim occurred. Thus, he argues that a preponderance of evidence showed that the lumbar radiculopathy was caused by the compensable injury. Mr. Hankins asks that the OOJ's decision regarding the compensability of lumbar radiculopathy be reversed. He contends that from the compensability ruling it would follow that treatment was required, as would a finding that he remained temporarily and totally disabled.

The first issue that must be addressed is the compensability of radiculopathy, as the other issues herein are dependent on this condition being added. We agree with Sprouting Farms Corp. and find no error in the OOJ's analysis and conclusion that a diagnosis of radiculopathy was not established in this case. Dr. Crow's report, which included a diagnosis of lumbar radiculopathy, predated the three EMG/NCS studies. Thus, Dr. Crow's diagnosis was made without benefit of the diagnostic testing. Further, Dr. Crow was clear in his assessment of degenerative conditions, based on the MRI findings.

As the OOJ found, only one EMG/NCS was abnormal and suggestive of radiculopathy. The other two studies were normal and did not diagnose radiculopathy. Dr. Stoll's report provides a credible basis to reject the single abnormal EMG/NCS report. There is simply insufficient evidence to hold lumbar radiculopathy compensable in this claim. The *Moore* case becomes inapplicable because there is simply a lack of medical evidence to support a diagnosis of radiculopathy, regardless of its etiology.

Based on a finding that radiculopathy is not a compensable condition, it follows that the left L5-S1 LESI is not medically related and reasonably required medical treatment for the compensable injury as contemplated by West Virginia Code § 23-4-3. Dr. Crow requested the treatment for the noncompensable diagnoses of lumbar radiculopathy or disc degeneration. Lastly, as found by the OOJ, Dr. Stoll's assessment that Mr. Hankins was at MMI was not rebutted by Dr. Wisman's reports or other evidence.

Based on the foregoing, we find that Mr. Hankins has failed to demonstrate that the OOJ was clearly wrong in affirming the claim administrator's orders dated October 6, 2021, and September 9, 2021.

Accordingly, we affirm.

Affirmed.

**ISSUED:** November 15, 2022

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

6